

CLERK'S OFFICE
A TRUE COPY
Feb 16, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Tracking of | ) | |
| *(Identify the person, property, or object to be tracked )* | ) | Case No.  24-M-339 (SCD) |
| a black 2021 Chevrolet Tahoe bearing Texas license plate TNH2156, VIN: 1GNSCNKD6MR249473 | ) | **Matter No.: 2023R00468** |
| | ) | |
| | ) | |

## TRACKING WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ✓ is located in this district;      is not now located in this district, but will be at execution;      the activity in this district relates to domestic or international terrorism;      other:
_____ .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)*      using the object      ✓ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: vehicle: a black 2021 Chevrolet Tahoe bearing Texas license plate TNH2156, VIN: 1GNSCNKD6MR249473; and private property: 8720 N. Deerwood Dr., Brown Deer, Wisconsin 53209.

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device within ten days from the date of this order and may continue use for 45 days. The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

into the vehicle described above      ✓ onto the private property described above

in the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.)*. ✔ at any time of day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to United States Magistrate Judge *(name)* Stephen C. Dries _____ and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

✓ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)* ____ for ____ days *(not to exceed 30)*

✓ until, the facts justifying, the later specific date of      07/19/2024      .

Date and time issued:      2-16-24. 9:10 am _____      _____
*Judge's signature*

City and state:      Milwaukee, Wisconsin _____      Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

Case No.

---

### Return of Tracking Warrant With Installation

1.  Date and time tracking device installed:  _____

2.  Dates and times tracking device maintained:  _____

3.  Date and time tracking device removed:  _____

4.  The tracking device was used from *(date and time)*:  _____

    to *(date and time)*:  _____.

---

**Return of Tracking Warrant Without Installation**

1.  Date warrant executed:  _____

2.  The tracking information was obtained from *(date and time)*:  _____

    to *(date and time)*:  _____.

---

**Certification**

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date:_____

_____
*Executing officer's signature*


_____
*Printed name and title*


*Subscribed, sworn to, and returned before me this date:*


_____          Date:_____

CLERK'S OFFICE
A TRUE COPY
Feb 16, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>a black 2021 Chevrolet Tahoe bearing Texas license<br>plate TNH2156, VIN: 1GNSCNKD6MR249473 | ) )<br>) )<br>) )<br>) )    Case No. **24-M-339 (SCD)**<br>) )    **Matter No.: 2023R00468**<br>) ) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

___21___ U.S.C. § 846/841(a)(1) . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
vehicle: a black 2021 Chevrolet Tahoe bearing Texas license plate TNH2156, VIN: 1GNSCNKD6MR249473; and private property: 8720 N. Deerwood Dr., Brown Deer, Wisconsin 53209.

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: ___07/19/2024___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JEFFREY MILAM    Digitally signed by JEFFREY MILAM
Date: 2024.02.15 09:59:08 -06'00'

*Applicant's signature*

SA Jeffrey Milam, DEA

*Applicant's printed name and title*

Sworn to before me Telephonically.

Date: 2-16-24

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter No.: 2023R00468**

I, Jeffrey Milam, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a black 2021 Chevrolet Tahoe bearing Texas license plate TNH2156, vehicle identification number (VIN) 1GNSCNKD6MR249473 (herein referred to as "the **Tahoe**"). Based on the facts set forth in this affidavit, I believe that the **Tahoe** is presently being used in furtherance of violations of 21 U.S.C. §§ 841 and 846, and that there is probable cause to believe that the installation of a tracking device on the **Tahoe** and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since September 2014. Before that, I was employed as a police officer with the St. Louis County Police Department in St. Louis, Missouri, where I spent the last three years as a Task Force Officer with the DEA. During my tenure as a Special Agent, I have been involved primarily in the investigation of large-scale drug traffickers operating not only in the City of Milwaukee and the State of Wisconsin, but also throughout the entire United States based upon the direction of investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration.

3.      As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and

the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4.     Based upon my training and experience, as well as information relayed to me during the course of my official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest border of the United States, because Mexican cartels control the transportation, sale, and importation of cocaine, marijuana, heroin, and methamphetamine into the United States.

2

5.     Based on my training, experience, and conversations with other law enforcement officers, I know that distributors of marijuana, methamphetamine, cocaine, heroin, as well as other controlled substances, often use cellular and landline telephones.  Additionally, I know that drug traffickers often change their phone numbers and cellular devices on a frequent basis to thwart law enforcement from tracking their phones and to conceal their identities. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know that drug traffickers often conduct extensive counter-surveillance to avoid law enforcement detection.

6.     Based upon training and experience, I know that narcotics-trafficking and money-laundering organizations routinely use several operational techniques to sustain their illegal enterprises. These practices are designed and implemented to achieve two paramount goals: (1) the successful facilitation of the organization's illegal activities, including the importation and distribution of controlled substances, and the subsequent repatriation of the proceeds of that illegal activity; and (2) the minimization of the exposure of coconspirators, particularly those operating in leadership roles, to investigation and prosecution by law enforcement.

7.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

3

8.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, or will be committed by George WOODS (DOB: 01/23/1975), Darius JARRETT (DOB: 01/29/1972), Kenneth BEVERLY (DOB: 05/23/1976), Carlos GARZA (DOB: 11/12/1964), Dante MCDONALD (DOB: 07/09/1979), Corey HUDSON (DOB: 01/08/1977), Decerdric DAVIDSON (DOB: 12/02/1981), and other unknown persons, collectively identified as the WOODS Drug Trafficking Organization (DTO).

## **PROBABLE CAUSE**

9.  The United States, including the Drug Enforcement Administration, is conducting a criminal investigation into George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, Dante MCDONALD, Corey HUDSON, Decerdric DAVIDSON, and other unidentified subjects for possible violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b).

10.  In late 2023, case agents debriefed a confidential source (hereinafter referred to as the CS),[1] who provided information on a large-scale drug distributor named George WOODS. The CS stated he/she was recently introduced to WOODS through an acquaintance in Milwaukee, Wisconsin. The CS stated WOODS distributes large quantities of cocaine, heroin, and marijuana throughout the midwest United States. The CS stated WOODS indicated that WOODS makes bi-monthly trips to Texas, where WOODS meets with an as-yet unknown source of supply near the

---

1 For several reasons, case agents believe the CS's information is reliable and credible. Substantial parts of the CS's information have been independently corroborated and verified by law enforcement. The CS has made direct observations, which were further corroborated and verified by law enforcement. The CS's information has been consistent with information obtained from travel records, telephone toll records, social media records, public databases, and surveillance. The CS has also provided information on violent crimes unrelated to this investigation, leading to the arrests of multiple suspects. The CS has prior convictions for theft, possession of controlled substances, possession of a firearm by a felon, manufacture or deliver controlled substances, and parole violations. The CS is cooperating for financial compensation.

3

U.S./Mexico border to obtain upwards of two hundred (200) kilograms of cocaine and/or heroin, and one-thousand (1,000) to two-thousand (2,000) pounds of marijuana. WOODS utilizes an as-yet unknown method to transport narcotics from the southern Texas border to various locations throughout the United States, including Milwaukee, Wisconsin; Chicago, Illinois; and Arizona. The CS stated WOODS owns/operates a trucking company, owns multiple properties, and multiple luxury vehicles, all of which are believed to be obtained through drug proceeds. The CS stated WOODS frequented a multi-unit apartment building in Milwaukee, later identified as 915 N. 24th Street, Milwaukee, Wisconsin. The CS stated a black male known only as "BUNK," oversees the day-to-day operations/distribution of narcotics at 915 N. 24th Street. The CS added that WOODS utilizes multiple apartments within this building to store and distribute narcotics.

11.     WOODS indicated to the CS that WOODS's Texas-based source of supply (SOS) can obtain large quantities of narcotics for WOODS. WOODS further indicated that WOODS flies to Texas via commercial carrier before driving to the U.S./Mexico border to facilitate the drug transactions with the SOS. WOODS identified the SOS as "CORTO," and the CS believes, based on WOODS's description, that "CORTO" is an Hispanic male.  The CS indicated that WOODS's telephone number was (414) 406-2832. The CS was later shown a Wisconsin Department of Transportation (DOT) photograph of WOODS (without identifiers), who the CS positively identified as WOODS.

12.     In late November 2023, the CS stated that he/she was present at 915 N. 24th Street, Milwaukee, Wisconsin, when WOODS brought approximately twenty (20) kilograms of suspected cocaine and/or heroin into the building. The CS stated WOODS arrived in a black Cadillac Escalade, from which WOODS removed three duffle bags containing the approximately twenty kilograms. WOODS placed the duffle bags and their contents into a first-floor apartment which was occupied by other unknown subjects. The CS saw the approximately twenty brick-sized

4

objects and observed a vintage photograph of a male wearing a large hat and two Bandoliers draped across his chest, attached to the outside of one of the kilogram wrappings. The CS further confirmed that there is a main entrance door on the south-side of 915 N. 24th Street. The CS has utilized this entrance on previous occasions.

13. On November 29, 2023, case agents conducted surveillance of 915 N. 24th Street. At this time case agents observed a black Chevrolet Suburban parked directly in front of the residence. The Chevrolet displayed a Texas temporary registration of 4267H51. Through a law enforcement database, the registration listed to a Kenneth D BEVERLY, 914 Blewit Dr., Cedar Hill, Texas on a 2017 Chevrolet Suburban. The vehicle was purchased from Gerald's Auto Sales Inc., 208 NW 28th Street, Fort Worth, Texas. Case agents also observed a blue Dodge Durango with Ohio registration JDE9086, and registered to a Darius JARRETT, 101 Towne Commons Way Apt. 11, Cincinnati, Ohio, on a 2006 Dodge Durango. The Dodge Durango was parked directly across the street from 915 N. 24th Street.

14. At approximately 11:57 a.m., case agents observed a black male, with a black and grey beard, walk from the south-side of 915 N. 24th Street toward the Dodge Durango. The black male opened the driver door to the Dodge, and leaned inside momentarily before entering and departing in a maroon Buick Park Avenue that was parked in front of the Dodge. Case agents later obtained a Wisconsin DOT photograph of Darius JARRETT, who strongly resembled the black male seen accessing the Dodge, before departing in the Buick.

15. While remaining in the area, at approximately 12:26 p.m., case agents observed a black male arrive in a black Ford van with no registration. The black male, wearing a black hoodie and black facemask, walked to the south side of 915 N. 24th Street, between 915 N. 24th Street and 911 N. 24th Street. Case agents observed a second subject who remained sitting in the front passenger seat of the Ford van. At approximately 12:35 p.m., the black male in the black hoodie

5

walked from the south-side of 915 N. 24th Street toward the Ford van. At this time, case agents observed the black male appeared to be carrying a white object in his left hand before re-entering the driver seat of the Ford van. Case agents attempted to follow the Ford van, but terminated surveillance after losing sight of the vehicle. Case agents believe the black male, who was driving the Ford van, had gone to 915 N. 24th Street to conduct a drug/money transaction based on the black male having emerged from this known drug-distribution location with an object after only a brief stay at the location and then promptly departing the area.

16.     Case agents returned to 915 N. 24th Street, and at approximately 3:15 p.m., a black male, wearing a grey hoodie and black jacket walked from the front yard of 915 N. 24th Street, and entered the driver seat of the black Chevrolet Suburban. At the same time, a second male subject (believed to be JARRETT), walked from the front yard of 915 N. 24th Street, and re-entered the Buick. Both vehicles departed the residence. After briefly following the Chevrolet Suburban, case agents observed the driver park in the area of W. North Ave. and W. Sherman Blvd. The driver, who was a light-skinned black male with a black beard and medium build, exited the Chevrolet Suburban and stood on an adjacent sidewalk.

17.     Case agents conducted telephone toll analysis of WOODS's cellphone and identified frequently called numbers. Through a law enforcement database, the top two telephone numbers -- (414) 416-3339 and (414) 915-3092 -- list to a Shanequa Collins. Case agents queried social media (Facebook) inputting the name "Shanequa Collins," and identified a profile with the name "Nene Bre'Arie." In the public photos section of this profile, case agents identified numerous recent photographs of a black female posing with a black male, who case agents positively identified as WOODS. Case agents believe Collins is WOODS's girlfriend.

18.     The third most frequent contact of WOODS's cellphone is telephone number (817) 707-5423. A law enforcement database lists the user of this telephone number as Carlos J. GARZA.

6

GARZA lists an address in Fort Worth, Texas. Case agents conducted telephone toll analysis of (817) 707-5423. Initial overlaps were identified between WOODS and telephone number (817) 707-5423. Specifically, in addition to contact with each other, both WOODS and the user of (817) 707-5423 were in frequent contact with telephone number (414) 336-9608, which is listed in a law enforcement database to Kenneth BEVERLY. BEVERLY was previously identified as the owner of the 2017 Chevrolet Suburban observed at 915 N. 24th Street in late November (detailed in paragraph 13). Based on all the aforementioned facts, case agents believe that GARZA may be associated with "CORTO," the alleged Texas-based SOS to WOODS.

19.     Another frequent contact of WOODS is telephone number (414) 574-6421. Through a law enforcement database, this telephone number lists to a Darius JARRETT. JARRETT was the subject of an anonymous drug tip submitted to the DEA Milwaukee District Office. In the drug tip, JARRETT was identified as a large-scale cocaine and Fentanyl distributor, who utilizes telephone number (414) 574-6421 and (262) 765-1263. The drug tip also stated that JARRETT utilizes a blue Dodge Durango with Ohio registration JDE9086, a vehicle previously identified by case agents during surveillance (detailed in paragraph 13).

20.     Case agents continued to examine social media databases and identified a male who appeared in several Facebook photographs with WOODS and others. The male appeared to be an older black male with a black and grey beard and wore designer sunglasses. Utilizing a law enforcement database, case agents tentatively identified this individual as Dante MCDONALD. The CS was shown a Wisconsin DOT photograph of MCDONALD (without identifiers), who the CS positively identified as "BUNK." Case agents later identified telephone number (414) 573-7220 as a frequent contact of WOODS. In a law enforcement database, this number listed to a Dante MCDONALD of 915 N. 24th Street Apt. 11, Milwaukee, Wisconsin.

7

21.     On December 6, 2023, case agents conducted surveillance of 915 N. 24th Street. At this time, case agents observed a black Chevrolet Tahoe with Texas temporary registration of 4317D85. The vehicle (hereinafter the **Tahoe**) was registered to Kevie Timmons, 3516 Grandy Street, Fort Worth, Texas, on a black 2021 Chevrolet Tahoe, VIN: 1GNSCNKD6MR249473. The dealer details for the **Tahoe** listed Gerald's Auto Sales Inc., 4416 S. Freeway, Fort Worth, Texas. Case agents observed a male exit the **Tahoe.** The unknown male carried a bag toward the south-side entrance to 915 N. 24th Street. Case agents observed two occupants (driver and front seat passenger) in the **Tahoe** at this time. Minutes later, the **Tahoe** departed the area driving past the case agents' fixed location. At this time, the driver was positively identified as WOODS, and the front passenger was identified as MCDONALD.

22.     Case agents queried the temporary Texas registration (4317D85) on the **Tahoe** through a law enforcement database. On November 8, 2023, at approximately 3:46 p.m. (CST), the **Tahoe** was captured on a license plate reader (LPR) traveling north on Interstate 55 in Pemiscot County, Missouri. Additionally, case agents queried the temporary Texas registration on the 2017 Chevrolet Suburban (referenced in paragraphs 13 and 16), which captured the Suburban on November 8, 2023 at approximately 4:18 p.m. (CST) traveling north on Interstate 55 in Pemiscot County, Missouri. Given the **Tahoe** and the Suburban traveled the same roadway, on the same date, just thirty (30) minutes apart, members of the WOODS DTO were likely caravanning from Texas to the Milwaukee, Wisconsin region.

23.     On December 8, 2023, the Honorable Stephen C. Dries, U.S. Magistrate Judge, Eastern District of Wisconsin authorized a Pen Trap and Trace and search warrant for GPS precision location information (pings) on WOODS's cellphone. On this same date, case agents learned that WOODS's cellphone was in the Fort Worth, Texas area. The cellphone remained in

the general area of Fort Worth and Dallas, Texas over the next several days. During this time, WOODS was in frequent contact with MCDONALD, GARZA, and JARRETT.

24.     On December 12, 2023, case agents monitored the location of WOODS's cellphone, and throughout the day, the cellphone appeared to be near three (3) municipal airports in the Fort Worth, Texas and Dallas, Texas regions. At approximately 10:34 a.m., WOODS's cellphone was near the Hicks Airfield, located at 100 Aviator Dr., Fort Worth, Texas. WOODS's cellphone remained in that general area until approximately 12:19 p.m. At approximately 10:18 a.m., WOODS received an in-coming call from telephone number (817) 707-5423, believed to be used by GARZA.

25.     At approximately 3:03 p.m., WOODS'S cellphone appeared to be in close proximity to the Perot Field Fort Worth Alliance Airport, located at 13901 Aviator Way, Fort Worth, Texas. At approximately 5:19 p.m., WOODS's cellphone appeared to be near the Dallas Executive Airport, located at 5303 Challenger Dr., Dallas, Texas. Case agents believe WOODS and/or his associates drove to the above-referenced airports where they remained at each location for relatively brief periods.

26.     On December 14, 2023, case agents again conducted court-authorized monitoring of the location data for WOODS's cellphone. At approximately 5:42 a.m., WOODS's cellphone was in the area of the Dallas Love Field Airport in Dallas, Texas. At approximately 10:57 a.m., WOODS's cellphone was showing to be around Milwaukee Mitchell International Airport. On the same date, case agents established surveillance in the Milwaukee, Wisconsin region in anticipation of WOODS's return. At approximately 12:32 p.m., WOODS's cellphone was showing to be around W. Brown Deer Road and N. Green Bay Road in Brown Deer, Wisconsin. At approximately 12:34 p.m., case agents observed a black Chevrolet Tahoe (the **Tahoe**) with Texas registration TNH-2156 traveling south on N. Deerbrook Trail from W. Brown Deer Road. The

9

registration listed to Kevie Timmons 3516 Grandy Street, Fort Worth, Texas on a 2021 Chevrolet Tahoe, listing the same VIN as described in paragraph 21. The **Tahoe** turned into The Bevy Apartments, located at 8600 N. Deerwood Dr., Brown Deer, Wisconsin 53209. At this same time, WOODS's cellphone was showing to be around The Bevy Apartments.

27. The **Tahoe** parked directly in front of 8720 N. Deerwood Dr. as the driver exited the vehicle. The driver stood near the rear hatch of the **Tahoe** and was positively identified by case agents as MCDONALD. MCDONALD appeared to be waiting outside the **Tahoe**. Approximately fifteen minutes later, a white Mercedes SUV pulled into the same apartment complex, and entered a parking structure located below 8720 N. Deerwood Dr. The Mercedes displayed Wisconsin registration ATF-1713, registered to a Shanequa Collins on a 2021 Mercedes GLS. Case agents observed the Mercedes was occupied by a driver and front passenger. Case agents previously learned that Collins was the girlfriend of WOODS, and further believed that WOODS and Collins were the occupants of the Mercedes as it arrived at the apartment complex.

28. At approximately 12:56 p.m., case agents observed a black male exit from the main lobby door of 8720 N. Deerwood Dr. The black male was positively identified by case agents as WOODS. WOODS was wearing a red/white baseball cap, and red hoodie as he entered the driver seat of the **Tahoe**. Case agents could see the **Tahoe** had a second occupant, who case agents later determined was MCDONALD.

29. Case agents followed WOODS and MCDONALD as they departed in the **Tahoe**. As the **Tahoe** traveled south toward Milwaukee, case agents believed WOODS and MCDONALD were traveling to 915 N. 24th Street. In anticipation of this event, case agents established surveillance in the immediate area of 915 N. 24th Street. At approximately 1:32 p.m., case agents observed the **Tahoe** arrive and park in front of 915 N. 24th Street. WOODS and MCDONALD exited the **Tahoe** and walked toward the south entrance of 915 N. 24th Street. Case agents remained

10

in the area, and at approximately 1:57 p.m., WOODS and MCDONALD were observed returning to the **Tahoe** from the south side of 915 N. 24th Street. WOODS was rolling a large silver suitcase on the ground. WOODS placed the silver suitcase into the compartment behind the driver's seat. Case agents observed WOODS momentarily struggle as he lifted the silver suitcase, indicating the suitcase contained something heavy. Case agents terminated surveillance when WOODS and MCDONALD departed the location in the **Tahoe**.

30.    Case agents continued to monitor the movements of WOODS's cellphone. At approximately 2:45 p.m., WOODS's telephone was showing to be around (1164-meter proximity) of Good Hope Road and N. 48th Street in Milwaukee, Wisconsin. The exact plot (GPS coordinates) indicated WOODS's cellphone was at Extra Space Storage, located at 5115 Good Hope Road, Milwaukee, Wisconsin. Approximately thirty minutes later, WOODS's cellphone was showing to be back around the Bevy Apartments in Brown Deer, Wisconsin.

31.    On December 18, 2023, case agents went to Extra Space Storage (at the above-referenced location) to serve an administrative subpoena. Case agents requested a list of all currently rented units, including renters' names and unit numbers. Case agents subsequently received a "rent roll" from Extra Space Storage. Case agents identified a renter named "Dante McDonald," unit #218, and move-in date of 04/17/2023. Case agents identified two storage units under the name "Hudson Corey,", unit #332, move-in date 01/01/2018; and unit #227, move-in date 03/23/2023. Based on training and experience, case agents are aware that drug traffickers often use public storage facilities to store drugs and/or drug proceeds in order to conceal and compartmentalize their illicit activities. Accordingly, case agents believe that after WOODS and MCDONALD departed from 915 N. 24th Street (an identified drug distribution point for the WOODS DTO) with the silver suitcase in the **Tahoe** on December 14 2023, they went to Extra Space Storage to either store or retrieve contraband or illicit proceeds kept at that storage facility.

11

32.     On December 20, 2023, case agents received a LPR alert on the **Tahoe**. On this date, at approximately 4:12 p.m. (CST), the **Tahoe** was captured traveling north on Interstate 55 in Pemiscot County, Missouri. On December 21, 2023, case agents conducted a spot-check of 915 N. 24th Street. At approximately 10:30 a.m., case agents observed the **Tahoe** parked directly across the street from the building. Based on the foregoing information, case agents believe MCDONALD and/or WOODS are currently using the **Tahoe** to travel between Milwaukee, Wisconsin and Texas in furtherance of the WOODS DTO's illicit activities.

33.     In early January 2024, case agents spoke to the CS. The CS said WOODS planned to resume operations after the holiday season. WOODS also told the CS that MCDONALD is currently overseeing logistics of the WOODS DTO. WOODS explained that MCDONALD, working on behalf of WOODS and unknown associates, was coordinating drug transportation routes. WOODS added that MCDONALD would be traveling to Texas at the beginning of January 2024. Case agents confirmed that on January 1, 2024, at approximately 4:18 p.m., the **Tahoe** was captured (LPR) traveling south on Interstate 57 near 159th Street in Illinois. Based on this information, case agents suspect that MCDONALD was driving the **Tahoe** to Texas on January 1, 2024 to coordinate future drug and/or money transactions on behalf of the WOODS DTO.

34.     On January 5, 2024, the Honorable William E. Duffin, U.S. Magistrate Judge, Eastern District of Wisconsin authorized a search warrant for the installation of a GPS tracking device on the **Tahoe** (Case No. 24-MJ-8). On January 8, 2024, case agents successfully installed the GPS tracking device on the **Tahoe** while the **Tahoe** was parked in front of 915 N. 24th Street, Milwaukee, Wisconsin.

35.     On January 9, 2024, case agents monitored the location of the GPS tracking device on the **Tahoe**, which showed it to be around N. Sherman Blvd. and W. Roosevelt Rd. in Milwaukee, Wisconsin. Case agents established surveillance in the area, and observed the **Tahoe**

parked in the driveway of 3817 N. Sherman Blvd., Milwaukee, Wisconsin. Case agents later observed MCDONALD exit the residence, and then briefly access the **Tahoe's** rear passenger compartment before returning to the residence. Through a law enforcement query, case agents tentatively identified Renee Crawford as the current occupant of 3817 N. Sherman Blvd. During toll analysis of (414) 573-7220, the telephone number associated with MCDONALD (detailed in paragraph 20 above), the top contact for this telephone number was (414) 238-7759. In a law enforcement database, this telephone is listed to Renee Crawford.

36.    In mid-January 2024, case agents spoke with the CS. The CS stated in early January 2024, WOODS told the CS that they (i.e., WOODS DTO members) were currently picking up "two hundred (200) more." The CS believed that WOODS was referring to the WOODS DTO obtaining two hundred kilograms of cocaine and/or heroin. The CS further stated that WOODS was planning to travel to California soon to obtain bulk marijuana from an as-yet-unidentified source of supply (SOS).

37.    On January 16, 2024, case agents monitored the GPS tracking device on the **Tahoe**. At approximately 3:51 p.m., the **Tahoe** appeared to be traveling south near 3817 N. Sherman Blvd. At approximately 7:30 p.m., the **Tahoe** was showing to be around N. 58th Blvd. and W. Vienna Ave. Through a law enforcement database, case agents identified 3844 N. 58th Blvd., Milwaukee, Wisconsin as MCDONALD's residence in 2018. This residence is within proximity to the above-described cross streets of N. 58th Blvd. and W. Vienna Ave. in Milwaukee, Wisconsin.

38.    On January 17, 2024, at approximately 12:59 a.m., case agents received a LPR alert on the black 2017 Suburban. The black Suburban was captured traveling southbound on I90/I94 near Grand Ave. in Gurnee, Illinois. At this same time, case agents received a LPR alert on the **Tahoe**, indicating it was in the same area. Case agents believe MCDONALD and other unidentified members of the WOODS DTO were operating the black Suburban and **Tahoe** in

conjunction as they traveled southbound in Illinois. There were no additional LPR alerts on either vehicle; however, the GPS tracking device on the **Tahoe** showed it arriving at Midway International Airport – located at 5700 S. Cicero Ave. Chicago, Illinois at approximately 7:29 p.m.

39.     Case agents later spoke with the CS, who stated WOODS was planning to fly to California to meet with his marijuana source of supply (SOS). WOODS previously told the CS that members of the WOODS DTO obtain approximately one ton (2000 lbs.) of marijuana at a time from an as-yet-unidentified California-based marijuana SOS. Case agents were also monitoring the court-authorized collection of location data from WOODS's cellphone. On January 17, 2024, at approximately 10:50 a.m., WOODS's cellphone was showing to be around the Dallas Love Field airport - located at 8008 Herb Kelleher Way Dallas, Texas. At approximately 3:33 p.m., WOODS's cellphone was showing to be around the Sacramento International Airport – located at 6900 Airport Blvd., North Natomas, California.

40.     On this same date, WOODS's cellphone was in contact with telephone number (530) 965-7017 on five (5) occasions. The subscriber of telephone number (530) 965-7017 is Kyle Anthony Silvalarva of 14121 Temple Cir., Magalia, CA. SILVALARVA has a prior conviction for Transport/Sell Narcotic/Controlled Substance. In addition, WOODS's cellphone was in contact with MCDONALD's telephone – (414) 573-7220 on three (3) occasions on this same date.

41.     On January 22, 2024, at approximately 1:40 p.m., case agents conducted a spot-check surveillance of 3844 N. 58th Blvd., Milwaukee, Wisconsin. At this time, case agents observed the black 2017 Chevrolet Suburban parked directly in front of 3844 N. 58th Blvd. Case agents observed a black male walk across the yard of 3844 N. 58th Blvd. and enter the front passenger seat of the black Suburban. Case agents followed the black Suburban to 3817 N. Sherman Blvd., where the black Suburban entered the driveway of the property. At this time, case

agents identified MCDONALD as the driver and Decerdric DAVIDSON as the passenger of the black Suburban.

42.    While at 3817 N. Sherman Blvd., case agents observed MCDONALD remove a large black garbage bag from the black Suburban's cargo area.  Case agents observed MCDONALD carry the black garbage bag inside 3817 N. Sherman Blvd. Moments later, case agents observed MCDONALD removed a large grey suitcase from the Suburban's cargo area and carry the large grey suitcase inside 3817 N. Sherman Blvd. as well.  Case agents later determined that DAVIDSON currently resides at 3844 N. 58th Blvd., Milwaukee, Wisconsin.

43.    On January 25, 2024, case agents conducted surveillance of MCDONALD and DAVIDSON as they traveled to a car dealership in Burlington, Wisconsin prior to MCDONALD picking up WOODS at Mitchell International Airport. At approximately 2:00 p.m., the court-authorized GPS vehicle tracking device on the **Tahoe** showed it traveling southwest from Milwaukee to Burlington, Wisconsin. The **Tahoe** eventually arrived at the Lynch Chevrolet GMC dealership, located at 2300 Browns Lake Dr., Burlington, Wisconsin. At approximately 3:18 p.m., case agents established physical surveillance in the area, and located the **Tahoe** parked at the car dealership. Case agents observed a black Cadillac Escalade with Texas registration RMF-8158 also parked at the same car dealership. The Escalade was registered to a Shaunterria Crampton of Arlington, Texas. Based on preliminary investigation, case agents believe Crampton is WOODS's daughter.

44.    Case agents observed a black male, strongly resembling DAVIDSON, exit from the passenger side of the **Tahoe**, and enter the driver's compartment of the Escalade. Moments later, the **Tahoe** departed the lot, followed by the Escalade. The two vehicles traveled east towards Milwaukee. Case agents eventually lost visual on the vehicles due to inclement weather.

45.     Earlier the same day, case agents learned that WOODS's cellphone was showing to be around the Dallas Love Field Airport (DAL). Case agents identified a possible flight from DAL to Milwaukee's Mitchell International Airport (MKE), scheduled to arrive at MKE around 4:30 p.m. Case agents monitored the court-authorized GPS tracking device on the **Tahoe**, which showed it traveling towards MKE at approximately 4:30 p.m. Case agents established surveillance and located the **Tahoe** as it parked at the arrivals pick up lane at MKE. The **Tahoe's** driver exited and case agents positively identified the driver as MCDONALD. Additional case agents entered the concourse in an undercover capacity and observed WOODS exiting from a recently arrived flight. Case agents observed WOODS enter the **Tahoe's** driver's seat and depart the area.

46.     On February 5, 2024, case agents conducted surveillance of MCDONALD and DAVIDSON as they traveled throughout Milwaukee in the **Tahoe.** Upon departing 3844 N. 58th Street, case agents followed MCDONALD and DAVIDSON in the **Tahoe** as they arrived at 3817 N. Sherman Blvd. While in the driveway of 3817 N. Sherman Blvd., MCDONALD removed a large suitcase from the compartment behind the driver's seat. MCDONALD carried the large suitcase into the residence after unlocking the front door.

47.     Minutes later, DAVIDSON departed in the **Tahoe**, leaving MCDONALD at 3817 N. Sherman Blvd. Case agents continued to monitor the GPS tracking device on the **Tahoe** and observed it traveling south on Interstate 43 toward Illinois. Over the next two days, the **Tahoe** traveled in a southwest direction, eventually arriving in the Dallas/Fort Worth, Texas region in the afternoon of February 6, 2024. While in the Fort Worth region, the **Tahoe** consistently remained around 1820 Lavin Plaza, Haslet, Texas. Case agents previously learned through a law enforcement database that 1820 Lavin Plaza lists DAVIDSON and MCDONALD as recent residents. WOODS is also listed as a previous resident of 1820 Lavin Plaza. Based on this information, case agents believe DAVIDSON drove the **Tahoe** to Texas, and is currently staying

16

at a residence associated with the WOODS DTO. Case agents further believe DAVIDSON, under the direction of MCDONALD and WOODS, is currently in Texas awaiting a shipment of narcotics that will be transported to the Milwaukee, Wisconsin region soon.

## TECHNICAL BACKGROUND

48.     Case agents are requesting the court order for a 45-day extension on the GPS tracking device currently on the black 2021 Chevrolet Tahoe bearing Texas license plate TNH2156, vehicle identification number (VIN) 1GNSCNKD6MR249473 (the **Tahoe**), registered to Kevie Timmons, 3516 Grandy Street, Fort Worth, Texas, be granted. I believe the continued use of a GPS tracking device on the **Tahoe** will obtain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846.

49.     Law enforcement have observed WOODS and MCDONALD using the **Tahoe** in mid-December 2023 and throughout January 2024. Case agents have also observed the **Tahoe** parked on multiple occasions in front of 915 N. 24th Street, Milwaukee, Wisconsin and 3817 N. Sherman Blvd., Milwaukee, Wisconsin, which are residences associated with MCDONALD. Law enforcement believes, based on the foregoing, that the **Tahoe** is presently within the Eastern District of Wisconsin.

50.     In order to track the movement of the **Tahoe** effectively and to decrease the chance of detection, law enforcement seeks authorization to place a tracking device on the **Tahoe** while it is in the Eastern District of Wisconsin. Because WOODS is associated with an apartment complex (i.e., 8720 N. Deerwood Dr., Brown Deer, Wisconsin 53209) that has a communal underground parking structure, it may be necessary to enter onto private property (specifically the underground

17

parking area for 8720 N. Deerwood Dr., Brown Deer, Wisconsin 53209) and/or move the **Tahoe** to affect the installation, repair, replacement, and removal of the tracking device.

51. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. I know through training and experience that DTO suppliers are often surveillance conscious and possess weapons. Law enforcement also requests delayed notice of this warrant for the same reasons. Finally, law enforcement requests permission to enter the **Tahoe** in order to install the device contemplated here. Law enforcement will not enter the **Tahoe** to install the device unless such entry is ultimately required to effect installation.

52. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

<u>**CONCLUSION**</u>

53. Based on the foregoing, I request that the Court issue the proposed extension of the search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes law enforcement, including but not limited to your affiant and technicians assisting in the above-described investigation, to continue monitoring/installation of tracking device currently installed on the **Tahoe** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Tahoe** after the use of the tracking device has ended: to install, maintain, and remove the tracking device during both daytime and nighttime hours; to

18

surreptitiously enter the underground parking area for 8720 N. Deerwood Dr., Brown Deer, Wisconsin 53209 and/or move the **Tahoe** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

54.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant until after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.